**UNITED STATES of America**

v.

**John BUETTNER–JANUSCH, Defendant.**

**No. 79 Cr. 710–CLB.**

United States District Court,
S. D. New York.

March 19, 1982.

Kostelanetz & Ritholz, New York City, for plaintiff; Jules Ritholz and William B. Wachtel, New York City, of counsel.

John S. Martin, Jr., U. S. Atty., S.D.N.Y., Roanne Mann, Asst. U. S. Atty., New York City, for defendant.

## MEMORANDUM AND ORDER

[Rule 35 Motion]

BRIEANT, District Judge.

For the reasons substantially set forth in the minutes of the Court at the time sentence was imposed in this case, defendant received a term of incarceration of five (5) years. He surrendered to commence service of his sentence on May 28, 1981 and has now been advised by the Parole Commission that his presumptive date of release will be November 27, 1983.

Defendant presently seeks to reduce his sentence by motion pursuant to Rule 35(b), F.R.Crim.P. Relying upon matters which he argues "have not been previously addressed by the Court," he seeks a "substantially reduced and modified sentence."

One of the grounds not previously addressed is defendant's complaint that he

was designated by the Bureau of Prisons as a "Central Monitoring Case." Such a designation is an administrative function of the Bureau of Prisons, which is part of the Executive Branch of Government. The motions papers show that an administrative appeal of this Central Monitoring designation was denied. Presumably, if there were any denial of due process or any irrationality in that administrative decision, defendant has an adequate remedy at law in an action against the Bureau of Prisons or Parole Commission, or by Petition for Writ of Habeas Corpus filed in the district of his incarceration. It was not the intention of Rule 35(b), F.R.Crim.P. that this Court should second guess the Bureau of Prisons or the Parole Commission in its performance of its statutory functions, and reduce a sentence on motion simply because of some administrative finding or ruling with which the sentencing court might be in disagreement, or which was not foreseen by the sentencing court at the time of sentence. While superficially, and based solely on the information presently available to the Court, it would seem puzzling that this particular defendant would be a Central Monitoring Case, the determination is one which is entrusted to the Executive Branch of Government by law and/or administrative rules having the force of law. Such a determination is not a function of this Court.

Like many convicted federal felons, defendant also complains about inaccuracies in the Form 792 report filed by the United States Attorney.[1] Such forms are generally rife with hearsay, and apparently this one is no exception. Surprising at this time is the contention that there is an ongoing investigation of criminal associates of defendant. The only criminal associates of defendant of which this Court has any knowledge were referred to obliquely in one of the hearsay admissions made by defendant to his co-conspirators or by the admission of a co-conspirator, and testified to at trial. That reference has to do with the character and

activities of the customer group which was said to be buying the LSD apparently manufactured by the defendant, residues of which were found in the laboratory vessels at New York University under his control.

■ Also, in fairness, if the Government has not asked for cooperation, it should not denigrate any defendant by calling the attention of the Parole Commission and/or Bureau of Prisons to any claimed failure to assist or cooperate. This entire matter was an issue before the Parole Commission, and this Court sees no reason why it should modify the sentence simply because of possible erroneous conclusions reached by the Parole Commission or its representatives. And, of course, upon the record presented here, the Court is not able to say with certainty that the determination of the Parole Commission was erroneous.

The Court is unable to state, as claimed in support of the motion, that defendant's criminal conduct was "at worst an aberration in an otherwise illustrious career," or that there is "no doubt that he will never again run afoul of the law." Defendant's attitude towards his crime was actually rather callous; he regarded himself as above the law, and smart enough, with the aid of former counsel, to defeat or divert the ongoing investigation of his criminal activities. Such counsel (not his trial counsel) may have given bad advice, but defendant's character and attitude was such that he accepted it willingly, and maintained until the last his feeling of being able to outsmart the authorities.

The total term of actual imprisonment, something just short of two and one-half years, which this defendant will actually serve if paroled on his presumptive release date, is not by any means excessive in light of his crime and his attitude towards his crime. There is no basis in fact in this case for a reduction of sentence.

1. This form is entitled "Report on Convicted Prisoner by United States Attorney." Defense counsel are entitled to submit a similar form entitled "Defense Attorney's Parole Report" and known as Form 337. Few do so. Those who do enjoy the same freedom of expression allowed to their adversary. See generally 28 C.F.R. § 2.19(a)(4)(b) and (c).

The Court was concerned at the time of sentence with the resultant loss to society of the benefit of the outstanding professional ability of this defendant. Apart from his criminality and the sociopathic aspects of his character (shown by what he did, how he did it, and by his taped comments while under investigation), Professor Buettner-Janusch is a leader in the nation in the specialized area of scholarship in which he worked and taught for so many years. Defendant's counsel, with considerable effort and ingenuity, conceived plans for alternatives to imprisonment, for all or part of this defendant's sentence, which would allow him to continue to pursue his scientific efforts.[2] The Court did not adopt the proposal, essentially because to do so would depreciate the seriousness of the crime and by appearing to grant special treatment to an elite defendant who committed a most serious crime, would bring the administration of Justice in this country into even further disrepute. The Court does not believe, as suggested on the motion, that upon his release defendant will be able to return to this district and pick up his highly regarded academic career where it left off. It is doubtful if any institution of higher learning would trust him ever again with unsupervised access to the chemical precursors of controlled substances, and it is even more doubtful if the officer administering his parole would agree to turn defendant loose unsupervised in a laboratory again.

However, the Court did recognize that the interests of society would be advanced if the prison assignment of defendant were such as to permit meaningful efforts of social benefit in the field in which he has such exceptional skill and experience. The Court considered in connection with this motion whether, in view of its considered judgment that the total sentence imposed should not be reduced, some arrangement should be made to place this defendant in an institution more closely adapted to his potential. Oral inquiry was made by the Court of the Community Programs Office of the Federal Prison System. By letter dated March 2, 1982, that Office responded as follows:

"In response to your request of February 26 for information concerning Mr. John Buettner-Janusch, who is serving a five year sentence at Federal Prison Camp Eglin Air Force Base, for conspiracy to manufacture and manufacture of drugs, this is to relate that on two occasions I spoke with Ms. Susan James who is the subject's case manager at Eglin AFB. She affirmed the fact that Mr. Buettner-Janusch is working in the prison laundry as a clerk, which is a position that calls for a degree of responsibility and autonomy. In his spare time the subject is writing a book and reviews manuscripts submitted by his former students. He has not expressed a desire to participate in community activities.

At my request, Ms. James had a conversation with Buettner-Janusch and inquired as to whether or not a transfer within the Federal Prison System would be of benefit to him, in that it would enable him to pursue his writing with access to a larger library. Also, transfer would afford him the opportunity to be employed in an occupation better suited to his intellectual capacity. Ms. James related that Mr. Buettner-Janusch's reply was that Eglin AFB was just as suitable as any other facility if faced with being incarcerated.

The Federal Prison Camp at Eglin AFB is a minimum security facility in Northwest Florida on the Gulf of Mexico, and enjoys a semi-tropical climate. The housing is dormitory style with the inmate population consisting of non-violent, first offenders lacking escape histories, with ages ranging from 20 to 65. Inmates are employed on the Air Force Base in labor

---

**2.** This motion renews a request that the plan be implemented, and also seeks (¶ 8), as "another alternative," commitment to the Community Service Sentencing Project now operated in New York City by the Probation Office of this Court in conjunction with the Osborne Association. This project administers requirements for community service as a special condition of probation.

crews, while others perform support functions for Camp operations. Adult basic and secondary education, as well as some college classes are held at the Camp during evenings. Offenders can also attend evening college classes on the Air Force Base at their own expense. There are abundant recreational activities available on the Base, and Federal Prison Eglin AFB is considered by most inmates as a desirable place to serve time."

The motion of defendant docketed January 26, 1982 is denied.

So Ordered.